UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORDELL WILLIAMS, | ) |
|           Plaintiff, | ) No. 23 CV 14905 |
| v. | ) Magistrate Judge Young B. Kim |
| CITY OF CHICAGO, *et al.*, | ) |
|           Defendants. | ) November 4, 2025 |

**MEMORANDUM OPINION and ORDER**

In October 2023 Plaintiff filed this lawsuit against Detectives James O'Brien and William Foley[1] under 42 U.S.C. § 1983 seeking damages for their role in his wrongful conviction, which caused him to spend more than 28 years in prison. Before the court are Cook County State's Attorney's Office's ("CCSAO") motions to quash two subpoenas that Defendant Detectives ("Defendants") served on CCSAO, (R. 85-1; R. 89-1), seeking to depose former State's Attorney Kimberly M. Foxx and CCSAO's Rule 30(b)(6) designee to answer questions related to 33 topics. For the following reasons, the motions are granted:

**Background**

In October 2022 a state court vacated Plaintiff's 1995 murder conviction and granted the state's request to drop the murder prosecution. (R. 85, CCSAO's Mem. at 1.) Thereafter, the state released Plaintiff from prison, and, according to CCSAO, Plaintiff secured a certificate of innocence. (R. 89, CCSAO Mem. at 2.)

---

[1] Detective Foley's Estate is named as the party Defendant.

In July and August 2025 Defendants served subpoenas in this case on Assistant State's Attorney Jessica Scheller for the depositions of Foxx and CCSAO. Defendants are critical of Foxx's decision to form the "Working Group" and "Lawyers Committee" to investigate and review convictions involving certain City of Chicago detectives, including Defendant Foley, and for adopting the Working Group's recommendations on whether convictions should be vacated. (R. 95, Defs.' Resp. at 2.) Defendants suggest that these two groups are biased, and their work is self-serving because many of their members are civil rights attorneys representing plaintiffs. (Id.) Relevant to Plaintiff's situation, the Working Group submitted a 22-page "Memorandum of Findings and Recommendation" to Foxx in May 2022 recommending the vacatur of Plaintiff's conviction. (R. 99-2 (filed under seal).) According to another CCSAO document filed under seal, Foxx adopted the recommendation not to oppose the vacatur of Plaintiff's conviction, (R. 99-4 at 3), which is consistent with what took place in Plaintiff's state court post-conviction proceedings in October 2022.

## Analysis

In September 2025 CCSAO moved to bar Defendants from deposing Foxx, relying on the so-called "Apex Doctrine" and the deliberative process privilege, and the Rule 30(b)(6) designee for CCSAO, based on the deliberative process privilege, relevance, and proportionality. (R. 84, CCSAO's Mot.; R. 85, CCSAO's Mem.; R. 88, CCSAO Mot.; R. 89, CCSAO Mem.) The court agrees that the subpoenas must be quashed. Defendants fail to demonstrate in their opposition that Foxx's testimony

2

about the formation of the groups and her decision to adopt their recommendation to vacate Plaintiff's conviction is relevant to the claims or defenses in this case. The court also finds that Defendants fail to explain why they require CCSAO's official position on the Rule 30(b)(6) topics. Moreover, many of the topics are too general, too broad, and not relevant to this case.

A.     **Apex Doctrine**

As a preliminary matter, the court notes that while it agrees that quashing Foxx's deposition subpoena is appropriate here, it declines to rely on the so-called "Apex Doctrine" to do so. That doctrine—developed in various jurisdictions primarily through case law—assumes a rebuttable presumption that high-ranking private and government officials should not be deposed unless the moving party can demonstrate that they possess unique first-hand knowledge of facts and that all less intrusive means of discovery have been exhausted. *See, e.g., Fleury v. Union Pac. R.R. Co.*, No. 20 CV 390, 2024 WL 1791739, at *1 (N.D. Ill. April 23, 2024). But the Apex Doctrine is unnecessary because the concerns it aims to address are already addressed by the Federal Rules of Civil Procedure. To be sure, to the extent this doctrine attempts to codify a level of protection for C-suite officers it is redundant because Rule 26 already provides a comprehensive mechanism for addressing the annoyance, oppression, and undue burden concerns that high-ranking officers routinely cite to avoid sitting for depositions. Moreover, the bedrock presumption of the doctrine that high ranking officers' time is more valuable or that they are busier

3

than front-line employees—who unlike higher-ranking officers do not enjoy the privilege of delegating their responsibilities to others—has no basis.

Since the 2015 amendments, Rule 26(b)(1) limits discovery to any nonprivileged matter that is relevant and, critically, "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The 2015 amendment highlights proportionality for the court's consideration when ruling on discovery issues. *See generally* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. This rule obligates the parties and the court to assess deposition requests based on a cost-benefit analysis. A deposition of a high-ranking executive who has substantial demands on her time and little direct, personal knowledge of the facts underlying the dispute, is inherently disproportional when that information may be readily available from other sources.

Furthermore, Rule 26(c)(1) affords every person, regardless of position or rank, adequate protection from abusive discovery. It allows a person or party to seek a protective order, which the court "may, for good cause, issue to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). As such, there is no need for a separate "Apex Doctrine" to shift the burden of proof, as the plain language of Rule 26(c)(1) places the burden squarely on the moving party to demonstrate "good cause" for the

4

protective order. The factors central to the Apex Doctrine—lack of unique knowledge and availability of alternative discovery—are simply common examples of "good cause" under that rule.

**B.     Rule 45**

When considering a motion to quash a subpoena, Rule 45 is just as important to the analysis as Rule 26, if not more. Courts must quash or modify a subpoena that subjects the respondent to undue burden. Fed. R. Civ. P. 45(d)(3)(A). The party moving to quash the subpoena bears the burden of "establish[ing] the impropriety of the subpoena." *Architectural Iron Workers' Loc. No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22 CV 5757, 2023 WL 2974083, at *1 (N.D. Ill. April 17, 2023). "[N]on-party status' is a significant factor . . . in determining whether the burden imposed by a subpoena is undue." *Little v. JB Pritzker for Governor*, No. 18 CV 6954, 2020 WL 1939358, at *2 (N.D. Ill. April 22, 2020) (quoting *U.S. ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02 CV 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005)). Treating nonparties differently is justified because while "discovery is by definition invasive [and] parties must accept its travails," nonparties have no "horse in the race" and, as such, "have a different set of expectations" as to what is demanded of them. *Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 CV 1853, 2017 WL 1233047, at *3 (N.D. Ill. April 4, 2017).

Under Rule 45, the scope of a subpoena to a nonparty "is as broad as what is otherwise permitted" under Rule 26(b)(1), *Powell v. UHG 1 LLC*, No. 23 CV 6389, 2024 WL 4286960, at *2 (N.D. Ill. Sept. 25, 2024) (internal quotations and citation

omitted), which states "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance for purposes of discovery is a low bar to meet. "Because the purpose of discovery is to help 'define and clarify the issues,' relevance is to be construed broadly," *Doe v. Loyola Univ. Chi.*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)), and information "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1).

**C.     Foxx Deposition**

Foxx represents in the motion that she has no "unique, personal knowledge of the matter in dispute." (R. 85 at 4.) In response, Defendants do not meaningfully explain why her deposition is required in this case. First, Defendants fail to demonstrate that they took "reasonable steps to avoid imposing undue burden" on Foxx for her testimony. Fed. R. Civ. P. 45(d)(1). Nor do Defendants explain the connection between the claims or defenses in this case and the Working Group's recommendation not to oppose the vacatur of Plaintiff's conviction and Foxx's decision to accept the recommendation. Based on the information the parties submit, there is no reasonable basis for permitting Defendants to litigate or even to challenge CCSAO's decision to abandon the murder prosecution of Plaintiff. And Defendants' attempt to secure discovery to litigate the propriety of the state's decision to drop the murder prosecution is not proportional to the needs of this case. The state court vacated Plaintiff's conviction and the state decided to drop the

6

prosecution after more than 28 years since the murders in question. These are the facts, and Defendants' effort to set up a mini trial within Plaintiff's civil rights case to adjudicate the collateral issues of whether the state should have opposed Plaintiff's post-conviction relief and retried him for murder is not warranted.

### D. CCSAO Deposition

CCSAO argues that Defendants' Rule 30(b)(6) topics are duplicative of discovery already produced and depositions not yet completed, seek information protected under the deliberative process privilege, and are overly broad. But the court notes at the outset—before even assessing the propriety of Defendants' Rule 30(b)(6) topics—that Defendants do not explain any steps they took to avoid burdening CCSAO. CCSAO is not a party litigant, but Defendants treat it as such. Defendants say they need CCSAO's official position on the topics outlined but fail to explain why. They also fail to explain the nexus between the CCSAO's official position and the claims and defenses in this case.

The court appreciates that this area of discovery might be useful to reduce or rebut the impact of Plaintiff's anticipated use of the certificate of innocence and perhaps the Working Group's recommendation to Foxx. But Defendants appear to have access to other sources for responsive information and fail to explain why those are insufficient for purposes of preparing their defense. For example, Defendants already know from the documents they reviewed that Foxx's "role or involvement in any decision regarding any conviction reviewed by the Working Group" was that of the final decision maker. Defendants also subpoenaed other

7

individuals who are most knowledgeable about these matters, but they do not offer any reasons why their testimony cannot adequately cover Topic No. 1-3, 5, 6, 25-27, and 29-31. Moreover, CCSAO has produced many pages of documents concerning the Working Group and the decision not to oppose Plaintiff's post-conviction relief. Defendants argue they need CCSAO's testimony because "a document cannot testify in court," (R. 96 at 7), but litigants routinely offer documents as evidence at trial.

Finally, many of the 30(b)(6) topics at issue are too general, overly broad, and/or not relevant to the claims or defenses in this case. Pursuant to Rule 30(b)(6), in their subpoena, Defendants "may name as the deponent . . . a governmental agency" but "must describe with reasonable particularity the matters for examination." As already explained, Defendants subpoena may only seek information that is relevant to the claims or defenses and proportional to the needs of this case. Of the 33 topics, (R. 89-1, Rule 30(b)(6) Subpoena at 6-9), this court finds Topic Nos. 4, 7-24, 28, 32, and 33 to be plainly directionless, overly broad, and not relevant to this case.[2]

---

[2] Having resolved CCSAO's motions on these bases, this court declines to consider the deliberative process privilege and whether CCSAO waived such privilege.

## Conclusion

For the foregoing reasons, CCSAO's motions to quash Defendants' deposition subpoenas are granted.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

9