# Exhibit 16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLNOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CORDELL WILLIAMS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:23-cv-14905 |
| v. | ) | |
| | ) | Hon. Lindsay C. Jenkins |
| JAMES O'Brien, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

EXHIBIT
4-23-25 H.K.
1

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT JAMES O'BRIEN'S FIRST**
**SET OF INTERROGATORIES TO PLAINTIFF**

Plaintiff Cordell Williams, pursuant to Fed R. Civ. P 33, hereby responds to Defendant James O'Brien's first set of interrogatories as follows:

**INTERROGATORIES**

1. State your full name, date and place of birth, social security number, driver's license number, your marital status and date of said marriage, the name of your spouse or partner, present residential address, and all past residential addresses you have had within 10 years of May 26, 1994, to the present, and if you have been known by any other name or whether you have given anyone another name for any purpose, please state all names by which you have been known, including nicknames, the dates of use of each such name, and the reasons for any change or use of such name.

**Name: Cordell R. Williams. Date and Place of Birth: August 1, 1974 in Chicago, IL. Marital Status: Single. Present Residential Address: 7622 S. Carpenter, Chicago, IL 60620. Prior Address: Stateville Correctional Center, P.O. Box 112, Joliet, IL 60434. Nickname: "Coolie." Plaintiff objects to the remainder of the information requested.**

2. Identify the names, address, and telephone numbers of all persons who have

knowledge of any facts relating to the occurrence(s) forming the basis of Plaintiff's Complaint and/or any injuries sought thereunder, the relationship of that person to the plaintiff, and the precise subjects on which said persons have knowledge.

**(1) Cordell Williams, who may be contacted through counsel.**
**(Plaintiff has knowledge of the events described in the Complaint);**

**(2) Londell Harper (920) 888-5328**
**(Witness was present at the time of the incident in the criminal case);**

**(3) Andre Rudik (312) 810-8454**
**(Witness was present at the time of the incident in the criminal case);**

**(4) Brenda Williams (773) 835-0604 (Mother)**
**(Witness will testify regarding the emotional, psychological, and physical health damages suffered by Plaintiff due to his arrest, criminal conviction, and incarceration);**

**(5) Lemuel Walker (202) 536-3215 (Cousin)**
**(Witness will testify regarding the emotional, psychological, and physical health damages suffered by Plaintiff due to his arrest, criminal conviction, and incarceration);**

**(6) Joel Walker (504) 450-3975 (Cousin)**
**(Witness will testify regarding the emotional and psychological damages suffered by Plaintiff due to his arrest, criminal conviction, and incarceration);**

**(7) Celeste Loretta Taylor (202) 251-3049 (Cousin)**
**(Witness will testify regarding the emotional and psychological damages suffered by Plaintiff due to his arrest, criminal conviction, and incarceration);**

**(8) Dr. Robert Carroll (708) 214-5006**
**(Witness will testify regarding Plaintiff's physical health and the deterioration of his chronic condition due to incarceration and lack of adequate medical care in prison);**

**(9) David Evans (708) 539-2929**
**(Witness was present at the time of the incident in the criminal case);**

**(10) All named Defendants, who may be contacted through counsel.**
**(They have knowledge of all matters in which they were involved).**

3. Describe your education, training and/or professional skills, including: the names and addresses of educational institutions attended; dates of attendance; degrees, certificates or diplomas issued to you by each institution, and whether you were ever the subject of any disciplinary proceeding or proceedings at any of the institutions.

**Plaintiff has a High School diploma from King High School. He also earned college credits from Lewis University between 1997-1998 in Business Management and Art Appreciation.**

4. Describe in detail and in chronological order employment or work history (including any illegal or unlawful activities from which you derived income) from May 26, 1994, to the present, including but not limited to any employment during your incarceration (whether paid or unpaid), and for each, state: the nature and general duties; the name and address of the occupation, job, or provider of such source of income; the date of commencement and termination of such occupation, job, or other source of income; the rate of compensation (or total compensation earned) for each such occupation, job or other source of income; and the reason each occupation, job, or other source of income was terminated.

**While incarcerated, Plaintiff worked in the kitchen at Joliet. Plaintiff was otherwise disabled due to severe Crohn's Disease and no health care treatment.**

5. Have you ever been convicted of: (a) a felony or a misdemeanor; or (b) a crime involving dishonesty or false statement? If so, state the nature thereof, the date of the conviction, and the court and the caption in which the conviction occurred. For the purpose of this interrogatory, a plea or finding of guilty shall be considered a conviction.

**Plaintiff was previously convicted of murder in *People v. Williams*, No. 94 CR 15518(01), in Cook County and was sentenced on August 10, 1995. These convictions were vacated by Judge Gaughan on October 17, 2022. On January 24, 2024, Plaintiff was granted a Certificate of Innocence on said charges. Plaintiff was convicted of aggravated battery to a peace officer in *People v. Williams*, No. 95 CR 22608(07). in Cook County and was sentenced on February 25, 1997.**

6. Had you ever been arrested, detained or held in custody by any law enforcement official for any reason prior to May 26, 1994 (including any traffic offenses or ordinance

violations) or after your release from prison? If so, provide the following information:

a. The date and location of any such arrest or occurrence;
b. The charges placed, if any;
c. The name and location of each court where you were prosecuted;
d. The court file and/or docket number;
e. The disposition of any such arrest or occurrence, including any and all fines or sentences imposed; and
f. The name and address of any attorneys who represented you.

**Plaintiff was arrested on April 22, 1992, for possession of burglary tools. The case was before Judge Wood, Docket No. 92230444. The case was *nolle prossed*. Plaintiff was arrested on June 25, 1993, for unlawful use of a weapon/no FOID card. The case was before Judge Bertucci, Docket No. 93324942. The case was SOL'd. Plaintiff was arrested on February 28, 1994 for mob action. The case was before Judge Greene-Thapedi, Docket No. 94223955. The case was SOL'd. Plaintiff believes there may have been several additional mob action arrests; however, the cases were all non-suited.**

7. Have you or anyone working on your behalf had any communication or contact of any kind you had with anyone from the Federal Bureau of Investigations, the United States Attorney's Office or any other part of the United States Department of Justice regarding any of the Defendant Officers or the shooting of Myron Cochran and Billy Johnson? If your answer is in the affirmative, describe each communication or contact including but not limited to the person with whom you communicated, the substance and nature of each communication or contact, and the date or approximate date of each communication or contact.

**No.**

8. Describe in detail any communication or contact of any kind you had with any of the Defendant Officers or any Chicago Police Officer prior to May 26, 1994, including but not limited to the identity of the officer involved, the substance and nature of each communication or contact, and the date or approximate date of each communication or contact.

**Plaintiff had contact with Defendant James O'Brien prior to May 26, 1994. Plaintiff believes this occurred sometime in the summer of 1992 in connection with a case in which the police were investigating Andre Rudik.**

9. Have you sought, received or in any way become aware of any statements (including affidavits) from any person regarding any of the events described in the Complaint? If your answer is in the affirmative, provide the following information:

a. The matters and things stated or contained in the statement(s);
b. The date or date of each statement(s);
c. The identities of each person to whom each statement is attributed and the persons who witnessed each statement;
d. Whether the statement was written, oral, typed, audio recorded and/or videotaped;
e. If the statement was made orally, the substance of the statement; and
f. Who is currently in possession or control of each statement or affidavit.

1. **Written affidavit of Odell Williams, dated March 4, 2013, in which he describes his interaction with Defendant James O'Brien and the Plaintiff on May 26, 1994. This affidavit is in the possession of the Plaintiff.**
2. **Written affidavit of Debra D. Sullivan, dated July 17, 2002, in which she describes her interaction with David Evans on the day of the shooting. This affidavit is in the possession of the Plaintiff.**
3. **Written affidavit of John D. Clark, dated January 3, 2002, in which he describes a conversation he had with David Evans regarding the Plaintiff's lack of involvement in/knowledge of the shootings. This affidavit is in the possession of the Plaintiff.**
4. **Written affidavit of David Evans, dated August 13, 2017, in which he avers that the Plaintiff had no knowledge of the shootings beforehand. This affidavit is in the possession of the Plaintiff.**
5. **Written statement of Derrick Burnett, no date, in which he describes accompanying Odell Williams to the police station on May 26, 1994, and his interaction with Defendant**

**O'Brien.**

6. **Written statement of Plaintiff, no date, in which he describes his physical abuse and psychological coercion by the Defendant detectives, as well as his trial counsel's ineffectiveness.**

10. Describe in detail all damages and relief you claim in his action, including: the nature of the damage or relief claimed; whether you have attempted to mitigate the damage claimed and if so, how; and the amount, basis for and calculations of any monetary damages claimed to date. In so doing, provide any and all calculations thereof and provide any and all documents supporting such calculations pursuant to Fed. R. Civ. P. 34.

**Plaintiff seeks damages for, *inter alia*, loss of liberty, being tortured, great mental anguish, humiliation, degradation, fear and anxiety, deep depression, despair, rage, emotional pain and suffering, lost wages, chronic physical conditions suffered while receiving no or grossly inadequate medical care, and psychological effects from being wrongfully imprisoned for more than 28 years and convicted of a crime he did not commit. Plaintiff attempted to mitigate the damage from his medical condition by bringing numerous federal lawsuits in federal court for medical neglect. *See* Response to Interrogatory No. 14, *infra*. Case law supports an award of one million dollars for each year an individual is wrongfully incarcerated. *See, e.g.*, *Limone v. United States*, 497 F. Supp. 2d 143, 243-44 (D. Mass. 2007) (collecting numerous cases in which juries and courts have found that "wrongfully imprisoned plaintiffs were entitled to compensation of at least $1 million per year of imprisonment"), *aff'd*, 579 F.3d 79, 106 (1st Cir. 2009).**

11. State any and all other expenses and/or losses you claim as a result of the occurrences alleged in your complaint, including claims for lost wages. As to each expense and/or loss, state the date or dates it was incurred, the name of the person, firm and/or company to whom

such amount are owed, whether the expense and/or loss in question has been paid and, if so, by whom it was so paid, and describe the reason and/or purpose for each expense and/or loss.

**Prior to his arrest, the Plaintiff worked for the Board of Education as a lunch room attendant. Due to his wrongful incarceration, he was deprived of wages, advancement, etc.**

12. Do you claim to have suffered any physical, psychiatric, psychological and/or emotional injury or illness as a result of any of the events described in the Complaint? If your answer is in the affirmative, provide the following information:

a. The nature and extent of each injury or illness;
b. The name and address of each attending physician and/or healthcare professional from whom you sought or received treatment;
c. The name and address of each consulting physician, psychologist, therapist and/or other healthcare professional from whom you sought or received treatment;
d. The name and address of each person and/or laboratory taking any X-ray, MRI and/or other radiological tests of you;
e. The date or inclusive dates on which each of them rendered you service;
f. The amounts to date of their respective bills for services;
g. From which of them you have written reports;
h. Whether you had suffered any psychiatric, psychological and/or emotional injury or illness prior to the events alleged in this Complaint;
i. Whether you have fully recovered from the injury that you sustained as a result of the events alleged in the complaint; and
j. If your injury still persists, describe the nature and extent to which your injury continues.

**Plaintiff suffers and continues to suffer from severe Crohn's Disease. He received no or grossly inadequate medical care during his incarceration, which caused substantial deterioration of his already serious condition. His private physician is Dr. Robert Carroll (708) 214-5006. As a result of his wrongful incarceration, Plaintiff also suffered from psychological injuries. In particular, anxiety disorder, depression, and night tremors, for which he took prescribed psychotropic medications. These disorders particularly manifested themselves in the last three years of Plaintiff's incarceration. Plaintiff saw mental health and medical professionals at the prison in connection with these**

**psychological injuries. Plaintiff does not recall the names of the specific prison medical staff members who treated him, but the conditions should be charted in Progress Reports.**

13. Had you suffered any physical, emotional, psychological or mental health injury or prolonged, serious and/or chronic physical or mental illness within ten (10) years prior to May 26, 1994? If your answer is in the affirmative, state:

a. The dates on which you were injured and/or ill;
b. Where you were injured and/or ill;
c. A description of each injury and/or illness suffered; and
d. The name, address and telephone number of each physician or other healthcare provider who treated your injury and/or illness, and
e. The dates you were treated.

**No.**

14. Have you ever filed any other lawsuit for personal injuries or a violation of your civil rights? If so, please state:

a. The court in which it was filed;
b. The year it was filed;
c. The title and docket number of said case;
d. The substance of the dispute or the claim advanced; and
e. The resolution, if any, including judgment and/or settlement.

1. ***Williams v. Joliet Corrections Medical Unit*, No. 98 CV 7559 (N.D. Ill., E.D.) This was a section 1983 lawsuit alleging failure to respond to Plaintiff's request for medical assistance, which resulted in Plaintiff being transferred to a hospital for emergency surgery. On September 19, 2001, the case was dismissed by stipulation without prejudice.**
2. ***Williams v. Ghosh*, No. 10 CV 162 (N.D. Ill., E.D.). This was a section 1983 lawsuit alleging deliberate indifference to Plaintiff's serious medical needs, i.e., Crohn's Disease, in violation of the Eighth Amendment. On May 24, 2018, the case was resolved by settlement concerning Plaintiff's treatment plan, and the matter was dismissed without prejudice.**
3. ***Williams v. Medin*, No. 18 CV 00016 (N.D. Ill., E.D.). This was a section 1983 lawsuit alleging cruel and inhuman treatment relating to Plaintiff being placed in an excessively**

**hot room without water or access to toilet for nine hours when he suffered from Crohn's Disease. On December 1, 2021, the district court granted the Defendant's motion for summary judgment and terminated the civil case.**

4. ***Williams v. Pfister*, No. 18 CV 01279 (N.D. Ill., E.D.). This was a section 1983 action alleging that Plaintiff's waist-chain medical permit was denied without cause on several occasions where it caused pain and suffering to Plaintiff due to Crohn's Disease and his ileostomy/colostomy appliance. On April 19, 2020, the case was dismissed with prejudice.**

15. Describe in detail any and all communications of any type you have had with any Assistant State's Attorney(s) or anyone affiliated with the Cook County State's Attorney's office relating in any way to the shooting of Myron Cochran and Billy Johnson. In so doing, identify each Assistant States' Attorney, the date, time and place of any such communication, and provide a comprehensive description of everything said to you and everything said by you during such communications.

**On May 27, 1994, at approximately 12:30 a.m., the Plaintiff was interviewed by ASA Gregory Vaci and Defendant O'Brien. A court-reported statement was taken around 2:30 a.m.**

16. Identify all persons, if any, you may call to testify as to each Defendant Officer pursuant to Fed. R. Evid. 404(b), and for each person, provide the following information:

a. The person's name, last known address, and phone number;
b. The name of the Defendant Officer(s) the witness will be called to testify about;
c. The nature of the claim or incident involving the person and the Defendant Officer(s); and
d. Any witnesses, documents, or other evidence you possess, or are aware of, that corroborate Defendant Officer's(s') involvement in the incident alleged by the person.

1. **George Anderson. While Mr. Anderson was handcuffed with his hands above his head.**

**Defendant O'Brien slapped Mr. Anderson in the face, placed a book on his side, and then used a pipe and hit the book with the pipe five or six times.**

2. **Marcellous Pittman. While Mr. Pittman was handcuffed, Defendant O'Brien punched Mr. Pittman in the chest and back.**
3. **Anthony Robinson. Mr. Robinson was repeatedly kicked and slapped by Detective Foley and two other detectives during an investigation.**
4. **Arnold Day. Mr. Day was grabbed by the neck and choked by Detective Foley and another detective. They also threatened to throw Mr. Day out of a window.**
5. **Marcus Wiggins. Mr. Wiggins was hit in the head with a flashlight by Defendant O'Brien.**
6. **Jerry Gillespie. Mr. Gillespie was slapped in the face, grabbed by the throat, and knocked to the ground while handcuffed to a chair by Defendant Foley and other detectives.**

17. Please provide each and every electronic mail address (AKA "email address") and identify any cellular telephone you have used and maintained since your incarceration at any jail or in the Illinois Department of Corrections from May 26, 1994 until today, and whether you have sent, received, drafted or saved any e-mails or text messages with regard to the incidents alleged in your Complaint. With regard to any and all cellular telephones used by you, identify the telephone number and service provider. **This interrogatory also serves as a request that Plaintiff preserve all of said e-mails and text messages during the above referenced time period. Any destruction thereof may result in a request for an instruction regarding spoliation.**

**Plaintiff maintains an e-mail address under "cordellwilliams74@yahoo.com." He also has a cellular phone with the following number: (708) 986-7411.**

**The Plaintiff submits the following privilege log pursuant to Fed. R. Civ. P. 26(b)(5)(A) with respect to privilege claims asserted under the attorney-client privilege as follows:**

| Doc. Type | Date | Author | Recipient | Subject Matter | Privilege |
|---|---|---|---|---|---|
| **Corresp.** | **Various** | **Williams** | **Becker** | **Representation** | **Attorney-Client Privilege** |
| **Corresp.** | **Various** | **Becker** | **Williams** | **Representation** | **Attorney-Client Privilege** |
| **Texts** | **Various** | **Williams** | **Becker** | **Representation** | **Attorney-Client Privilege** |
| **Texts** | **Various** | **Becker** | **Williams** | **Representation** | **Attorney-Client Privilege** |

18. Identify all internet photo and video sharing service and social media accounts, including but not limited Facebook, Instagram, YouTube, Snapchat, Vine, X (former Twitter), TikTok, Linkedin, Myspace, GooglePlus, Blogspot, Livejournal, Blogger, Flickr, Xanga, Tumblr, Wordpress, Reddit, maintained by you for the past five years and for each account, identify your user name and email address associated with that account. If such profile or site is password protected, please either provide your password or a printout of said profile and all activity thereon that relates in any way to the incidents or damages alleged in your Complaint. **This interrogatory also serves as a request that Plaintiff preserve all of said profiles and accounts and all postings or other activity thereon during the time period referenced in Interrogatory No. 17 through the present. Any destruction thereof may result in a request for an instruction regarding spoliation.**

**Plaintiff maintains a Facebook page under the name of "Cordell Williams." There is no activity on the account concerning the incidents in the Complaint.**

19. Identify the steps and methods taken or attempted by you to prove your innocence after your arrest for the shooting of Myron Cochran and Billy Johnson and all facts, documents, and/or witnesses that support your efforts to prove your innocence.

**Prior to trial, Plaintiff asserted that he was physically and psychologically abused in order to extract a false confession. In this regard, on October 25, 1994, Plaintiff filed a motion to suppress statements. His attorney later withdrew the motion by threatening to withdraw from the case if the Plaintiff did not agree, which subsequently formed the basis for a claim of ineffective assistance of trial counsel in Plaintiff's supplemental claims to his successive petition for post-conviction relief. Said trial counsel has since been suspended from the practice of law for mishandling numerous criminal cases.**

**On May 29, 2006, Plaintiff lodged a complaint with the Office of Professional Standards regarding the physical abuse and coercion that he suffered from Defendants O'Brien and Foley. The CR Summary Report Digest dated July 25, 2006, names both Defendants O'Brien and Foley as the offending detectives.**

**On July 17, 2022, Plaintiff filed supplemental claims to his successive post-conviction petition, in which he asserted that his due process rights were violated where he was physically tortured and coerced by the Defendant detectives, as well as that his trial counsel was ineffective for withdrawing his motion to suppress statements prior to trial. On October 17, 2022, Plaintiff's post-conviction petition was granted by Judge Gaughan, and the Plaintiff's murder convictions were vacated.**

**On August 7, 2023, Plaintiff filed a Petition for a Certificate of Innocence. On January 24, 2024, Presiding Judge Reddick granted Plaintiff a Certificate of Innocence with respect to said charges.**

20. Do you contend that the Defendant Officers withheld or caused to be withheld any exculpatory or impeachment evidence? If your answer is affirmative, state the full and factual basis for your contention, including but not limited to:

a. A description of each discrete piece of exculpatory evidence or impeachment evidence that was withheld;

b. The identity of the Defendant Officer you believe withheld the exculpatory or impeachment evidence;
c. When the Defendant Officer came into possession or first learned of that evidence;
d. The date, time, and location each discrete piece of exculpatory or impeachment evidence was discovered;
e. The reasons you believe the evidence is exculpatory or impeaching;
f. How you learned of the evidence's existence;
g. When you learned of the evidence's existence; and
h. A description of what, if anything, you, your attorney and/or your attorney's investigator did with that evidence after you learned about it.

**The Defendant detectives withheld exculpatory evidence that the Plaintiff was physically tortured, coerced, and intimidated into providing a false confession.**

21. Identify each physically and mentally coercive tactic each Defendant Officer used with you, and for each one, provide the following information:

a. A description of each physically and mentally coercive tactic and its effect on you;
b. The identity of each Defendant Officer who employed the physically or mentally coercive tactic;
c. The identities of any Defendant Officers or any other person who witnessed the physically or mentally coercive tactic;
d. The date, time and location of each physically or mentally coercive tactic; and
e. A description of each injury you claim to have suffered as a result of the coercive tactic.

**In the early morning hours of May 26, 1994, Defendant Foley entered the interrogation room where Plaintiff was being held at Area One. Plaintiff was handcuffed to a ring. Defendant Foley entered the room with a phone book. Upon Defendant Foley's instruction, Plaintiff stood up. Detective Foley struck Plaintiff with the phone book, knocking the wind out of him. Detective Foley then slapped Plaintiff in the face.**

**In the early morning hours of May 26, 1994, Defendant O'Brien asked some initial questions of Plaintiff, told Plaintiff he would be leaving the room and, upon his return, Plaintiff would be begging to tell him something. Thereafter, Defendant Foley entered the interrogation room, as described above. When Defendant Foley left, Defendant O'Brien**

**reentered the room and informed Plaintiff that he would be speaking with ASA Gregory Vaci and that he had better cooperate. Defendant O'Brien than inquired about the health of Plaintiff's father, Odell Williams, and asked Plaintiff how long his father would survive if Plaintiff was unable to take him to his dialysis treatments. After Defendant O'Brien brought in Odell Williams to see the Plaintiff – after having told Odell Williams that if Plaintiff would cooperate he could walk out of the station with his father, he told Mr. Williams he must leave because the Plaintiff was going to talk with the state's attorney. Defendant O'Brien rehearsed the alleged statement with Plaintiff and corrected certain details. Defendant O'Brien was present during the interview with ASA Vaci and the reported statement. Plaintiff was deprived of food, water, and restroom breaks during this approximately 25-hour period.**

22. State the full and factual basis for the claims in your Complaint that the Defendant Officers fabricated evidence or generated false documentation, including but not limited to:

a. A description of each piece of fabricated evidence or false document;
b. The identity of each Defendant Officer or other Chicago Police Officer who you believe fabricated evidence or falsified document;
c. The reason(s) you belief the evidence is fabricated or document is falsified; and
d. Each fact supporting your belief that the evidence is fabricated or document is falsified.

**Defendant O'Brien issued the Complaint for Preliminary Examination against the Plaintiff on May 27, 1994, knowing that said Complaint was false.**

**On June 28, 1995, Defendant O'Brien testified at Plaintiff's criminal trial and provided false testimony concerning statements allegedly made by the Plaintiff.**

23. Have you ever been a member of (or affiliated with) any street gang? If so, identify and describe:

a. The nature of such street gang and/or organization;
b. The dates of each membership and/or affiliation;

c. Your rank(s) or position(s) within the gang and/or organization;
d. Your duties and/or responsibilities relative to the street gang and/or organization;
e. Any alias or nicknames by which you were known within the gang;
f. The name of any rival gangs from May 26, 1992 to May 26, 1994 on the date of the occurrence and/or any longstanding rivalry;
g. The date (if any) when you left the gang; and
h. The reasons (if any) that you left the gang.

**Yes. Plaintiff was in the Vice Lords. Plaintiff was a "Lil Lord" (little Vice Lord) from ages 7 to 12. Plaintiff was in the gang in order to survive in his neighborhood. Plaintiff left the gang in 2005. The reasons he left were maturity, understanding, spiritual growth, and concerns over health and well-being. The rival gang was the Disciples.**

24. Identify each person with whom you discussed your criminal case, including the facts and circumstances of your arrest, prosecution, conviction, and/or your innocence. For each person you identified, provide the person's identifying contact information, the dates of your discussion(s), and whether the communications were written or oral.

***See* Answer to Interrogatory No. 2, *supra*.**

25. State whether you, or anyone acting on your behalf, has made a complaint, allegation, or other statement to the Office of Professional Standards, the Independent Police Review Authority, the Illinois Torture Inquiry and Relief Commission, the Illinois Prisoner Review Board, the Office of the Governor of the State of Illinois, the Cook County State's Attorney, the Illinois Attorney General, the Federal Bureau of Investigation, the United States Department of Justice, any other local, state or federal governmental or quasi-governmental agency (other than the United States District Court in which you have filed your lawsuit), or to any private entity (e.g., the Center for Wrongful Convictions, the Exoneration Project, Medill Innocence Project, Medill Justice Project, Medill School of Journalism, Illinois Prison Project) against any of the named defendants you have sued in this litigation. If so, please state:

a. The governmental or private entity to which you have made your complaint or allegation;
b. The date on which you made the complaint or allegation;
c. The named defendant(s) against whom you made your complaint or allegation, and;
d. If you did not make the complaint or allegation personally, the person(s) who made the complaint or allegation on your behalf.

**On May 29, 2006, Plaintiff personally lodged a complaint with the Office of Professional Standards regarding the physical abuse and coercion that he suffered from Defendants O'Brien and Foley.**

**Plaintiff also believes that he submitted a claim to the Illinois Torture Inquiry and Relief Commission, as well as wrote correspondence at some point to the Center on Wrongful Convictions and to the Illinois Prison Project.**

26. Identify all Illinois Department of Correction facilities in which you were incarcerated after your conviction for the homicides of Myron Cochran and Billy Johnson.

**Plaintiff was housed at the Joliet Correctional Center, Menard Correctional Center, and Stateville Correctional Center.**

27. Identify any and all past or present communications with any government entity or agent, including but not limited to, e.g., former Governor Pat Quinn or his office, the Office of the Governor, the Prisoner Review Board, or any private entity, (e.g., the Center for Wrongful Convictions, the Exoneration Project, Medill Innocence Project, Medill Justice Project, Medill School of Journalism, David Protess, Chicago Innocent Program), regarding your claims of innocence and your efforts to reverse your conviction.

***See* Answer to Interrogatory No. 25, *supra*.**

28. Did you or any person working on your behalf communicate with the Cook County State's Attorney's Office ("CCSAO") about having your convictions vacated or the charges against you dropped? If your answer is affirmative, identify and describe each communication,

including but not limited to the substance of the communication(s), the identity of each person who communicated on your behalf and on behalf of the CCSAO, and the date of said communication(s).

**No. Plaintiff did not initiate communications with the Cook County State's Attorney's Office about having his convictions vacated or the charges dropped.**

29. Did you or any person working on your behalf negotiate or reach an agreement with the CCSAO to resolve your petition for certificate of innocence? If your answer is affirmative, describe the agreement and the negotiations leading up to it, and identify each person who negotiated on your behalf and on behalf of the CCSAO and each communication that took place related to this agreement and the date of said agreements and negotiations.

**No.**

30. State whether you or any attorney who has ever represented you at any stage of the court or other proceedings stemming from the charges against you for the homicides of Myron Cochran and Billy Johnson has ever communicated with anyone from the Cook County State's Attorney's Working Group, specifically, Special Assistant State's Attorneys, Marc. R. Kadish, Maria Hawilo, and Vincent Southerland, or anyone from "The Lawyers Committee" regarding your conviction for the shooting of Myron Cochran and Billy Johnson or regarding any of the Defendant Officers in this case. If you answer is affirmative, please identify and describe each communication, including but not limited to the identity of the person(s) involved in the communication, the substance of each communication or contact, the date of approximate date of each communication, and whether the communication was written and/or oral.

**Yes. Plaintiff received an introductory letter from the Working Group on October 13, 2021. Plaintiff had an in-person interview with Special Prosecutor Hawilo on November 30, 2021, at the Stateville Correctional Center.**

**Plaintiff's counsel received/sent written communications from/to the Working Group through threads commencing on the following dates: October 13, 2021 (re: introductory letter and scheduling); November 10, 2021 (re: scheduling); November 16, 2021 (re: scheduling); November 22, 2021 (re: providing documents); November 26, 2021 (re: scheduling); December 2, 2012 (re: OPS Report); December 10, 2021 (re: OPS Report); December 30, 2021 (re: OPS Report); January 20, 2022 (re: status on court date); January 27, 2022 (re: status on court date); March 9, 2022 (re: scheduling); March 22, 2022 (re: obtaining co-defendant files); May 23, 2022 (re: co-defendant files); October 11, 2022 (re: status on court date); and October 17, 2022 (re: status on court date).**

Dated: July 29, 2024.

Respectfully submitted,

/s/ Steven W. Becker

Steven W. Becker
Law Office of Steven W. Becker LLC
205 N. Michigan Avenue, Suite 810
Chicago, Illinois 60601
(312) 396-4116
swbeckerlaw@gmail.com

## CERTIFICATE OF SERVICE

I, Steven W. Becker, certify that on July 29, 2024, I caused to be served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT JAMES O'BRIEN'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** upon the following counsels by email:

Eileen E. Rosen
Patrick R. Moran
Andrew J. Grill
Brittany D. Johnson-Delgado
Annie R. Goldstein
Rock Fusco & Connelly, LLC
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
Phone: (312) 494-1000

/s/ Steven W. Becker
Steven W. Becker

**VERIFICATION**

I, Cordell Williams, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the responses to Defendant James O'Brien's First Set of Interrogatories to Plaintiff are true and correct to the best of my knowledge and belief.

CORDELL WILLIAMS

7/26/2024

Executed