# Exhibit 36

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CRIMINAL DIVISION

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | No. 94 CR 15518 |
| | ) | |
| CORDELL WILLIAMS, | ) | Hon. Vincent M. Gaughan |
| | ) | |
| Defendant-Petitioner. | ) | |

**SUPPLEMENTAL CLAIMS TO**
**<u>SUCCESSIVE POST-CONVICTION PETITION</u>**

NOW COMES Petitioner CORDELL WILLIAMS, by and through his counsel, the Law Office of Steven W. Becker LLC, and, pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, hereby submits the following supplemental claims to his successive post-conviction petition:

**I. CORDELL WILLIAMS' DUE PROCESS RIGHTS WERE VIOLATED WHERE THE POLICE, WHO HAVE ENGAGED IN A PATTERN AND PRACTICE OF TORTURE, USED PHYSICAL ABUSE AND COERCION TO EXTRACT A STATEMENT FROM MR. WILLIAMS THAT WAS INTRODUCED AGAINST HIM AT HIS CRIMINAL TRIAL.**

Herein, the Petitioner was subjected to physical torture by Detective William Foley and coerced by Detective James O'Brien, both of whom have long histories of physically abusing suspects under Commander Jon Burge. Because Petitioner's statement, which was obtained by torture and coercion, was used against him at his trial, the Petitioner's due process rights were violated.

In the landmark case of *People v. Wrice*, 2012 IL 111860, the Illinois Supreme Court held that the "use of a defendant's physically coerced confession as

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

substantive evidence of his guilt is never harmless error." *Id.* ¶ 84. *See People v. Gibson*, 2018 IL App (1st) 162177, ¶ 106 ("While many errors might affect the fairness of a trial, the law reserves a special place for physically coerced confessions, not only because they pervert the truth-seeking function but because they undermine the overall integrity of the trial process."); Steven W. Becker, *Preserving the Integrity of the Court Against Moral Defilement:* People v. Wrice *and the Question of Whether the Use of a Physically Coerced Confession can Constitute Harmless Error – Lessons of Wisdom from International Law*, 5 DEPAUL J. SOCIAL JUSTICE 3 (2011) (noting that, under international jurisprudence, "the harmless error doctrine is inapplicable to any criminal case involving the use of a confession extracted by physical torture, as one can never receive a fair trial under such circumstances").

As quoted by the Illinois Supreme Court in *Wrice*:

> Some coerced confessions may be untrustworthy. [Citation.] Consequently, admission of coerced confessions may distort the truth-seeking function of the trial upon which the majority focuses. More importantly, however, the use of coerced confessions, 'whether true or false,' is forbidden 'because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system – a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused of his own mouth,' [citations]. This reflects the

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

> 'strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will,' [citation] as well as 'the deep-rooted feeling that the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminal as from the actual criminals themselves,' [citation]. Thus, permitting a coerced confession to be part of the evidence of which a jury is free to base its verdict of guilty is inconsistent with the thesis that ours is not an inquisitorial system of criminal justice.

*Wrice*, 2012 IL 111860, ¶ 70 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 293-94 (1991) (White, J., dissenting)).

Thus, "due process is implicated when the government seeks a conviction through the use of evidence obtained by extreme coercion or torture." *People v. Bates*, 218 Ill. App. 3d 288, 297 (1st Dist. 1991). *See* U.S. CONST., amends. V, XIV; ILL. CONST., art. I, § 2.

Moreover, an officer's involvement in a systematic pattern or practice of coercing suspects is relevant and admissible in determining whether a defendant's confession was voluntarily given. *People v. Patterson*, 192 Ill. 2d 93 (2000); *People v. King*, 192 Ill. 2d 189 (2000). Such evidence of coercion is relevant to show intent, plan, motive, and course of conduct of the officer involved, as well as to impeach the

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

credibility of the officer. *See People v. Reyes*, 369 Ill. App. 3d 1, 18-19 (1st Dist. 2006); *People v. Cannon*, 293 Ill. App. 3d 634, 640 (1st Dist. 1997). In a pattern and practice case, three factors are generally considered: (1) whether the conduct involves the same officer and is similar to that alleged in the present case; (2) whether the evidence is of such a conclusive character that it would likely change the result on retrial; and (3) the evidence must not have been discoverable prior to the original trial. *See Reyes*, 369 Ill. App. 3d at 19-20 (following the test articulated in *Patterson*, 192 Ill. 2d at 139 (2000)).

Furthermore, an officer may not stand by and do nothing while other officers commit acts of torture and abuse. *People v. Whirl*, 2015 IL App (1st) 111483, ¶¶ 102-103. Such "silent acceptance" is relevant to the officer's credibility, and evidence supporting such acquiescence is sufficient to establish a pattern and practice claim against the officer. *Id.* ¶ 103.

**Pertinent Facts**

The Petitioner was physically beaten by Detective William Foley and coerced by Detective James O'Brien, who worked in concert in interrogating Petitioner, into providing an incriminating statement. Petitioner was also deprived of sleep, restroom privileges, food, and water. Detective O'Brien also signed the Complaint against the Petitioner initiating the criminal case. (C. 7)

The Petitioner was arrested at approximately 1:30 a.m. in the early morning hours of May 26, 1994, after which he was transported to Area One. (C. 6; R. F96,

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

F104) Petitioner was in the custody of the police for approximately 25 hours between 1:30 a.m. on May 26, 1994, and 2:30 a.m. on May 27, 1994, when a statement was taken. (R. G17, G107)

Upon arrival at Area One, the Petitioner was placed in an interrogation room and handcuffed to a ring. Following initial questioning by Detective O'Brien, the detective told the Petitioner that he would be leaving the room and, upon his return, the Petitioner would be begging to tell him something. Thereafter, Detective Foley entered the room with a phone book. *See* OPS Complaint of Cordell Williams, dated May 29, 2006, which is attached hereto as Exhibit A. Upon instruction, the Petitioner stood up, after which Detective Foley struck him in the rib area with the phone book, knocking the wind out of the Petitioner. *Id.* at 1; *see* Complaint Register 313990, dated 25 July 2006, at 2, which is attached hereto as Exhibit B.[1] Detective Foley then slapped the Petitioner in the face. Exhibit A at 1; Exhibit B at 2. At that point, Detective Foley left the room. Detective O'Brien re-entered the room and informed the Petitioner that he would soon be speaking with Assistant State's Attorney Gregory Vaci and that he had better cooperate. Detective O'Brien then informed the Petitioner that his father was at the station.

Detective O'Brien informed Petitioner's father, Odell Williams, that if the Petitioner would cooperate, he could walk out of the station with his father. *See* Affidavit of Odell Williams, which is attached hereto as Exhibit C. Detective

[1] The documents incorrectly refer to "Detective Kenneth O'Brien"; they should read "Detective James O'Brien." *See* C. 7 (indicating Detective James O'Brien).

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

O'Brien also asked Petitioner's father about his dialysis treatments, when he last saw the Petitioner, and if he knew who the Petitioner was with. *Id.* at 1. After that, he accompanied Odell Williams to an interrogation room. *Id.* The Petitioner was then brought into the room with his father. *Id.*

When Detective O'Brien left the room, the Petitioner broke down crying and told his father that he did not kill anyone. *Id.* Odell Williams begged his son to tell the detectives whatever they wanted to know. *Id.* The Petitioner, however, cut off his father and told him that he had been beaten up in custody and that his face was putty. *Id.* Detective O'Brien then came into the room and told Odell Williams that his son had to go talk with the state's attorney. *Id.* at 1-2.

Detective O'Brien rehearsed the alleged statement with the Petitioner and corrected certain details. Exhibit A at 1. The Petitioner was deprived of food, water, and restroom breaks during this period. *Id.*; Exhibit B at 1-2. At approximately 12:30 a.m. on May 27, 1994, ASA Vaci and Detective O'Brien interviewed the Petitioner. (R. G15, G94) A court-reported statement was taken at around 2:30 a.m. (R. G17, G107)

Petitioner's statement was used against him at trial. (R. G108-113)

**Detective William Foley**

According to the Illinois Torture Inquiry and Relief Commission (TIRC), Detective William Foley has "been the subject of many complaints of police misconduct. Investigators have identified seven published Illinois cases detailing

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

allegations of abuse leveled against Detective Foley or officers working with Detective Foley. In 2013, the City of Chicago paid in excess of $6 million dollars to settle a suit brought against several officers, including William Foley. In addition, numerous criminal defendants have lodged formal complaints alleging that Detective Foley engaged in misconduct." *In re: Claim of Arnold Day*, TIRC Claim No. 2011.095-D, Corrected Disposition, Jan. 23, 2017, at 9.

For example, Arnold Day was arrested in February 1992, transported to Area 3, placed in an interrogation room, and handcuffed to a steel ring. *Id.* at 2, 4. Day was questioned by Detective Foley, Detective Kenneth Boudreau, and another detective. *Id.* at 4. "At some point, Day was alone with Boudreau and Foley re-entered. Foley yelled at Day, then grabbed Day by the collar and pushed him against the wall, and threatened to throw him out the window. Boudreau was present but did nothing. Day then agreed to confess to the murders . . . ." *Id.* Day's conviction was subsequently vacated based on the torture perpetrated by Foley. *See* Elena Sucharetza, *Cook County 1994 Murder Conviction Overturned; Allegations of Cop Torture*, INJUSTICE WATCH, Dec. 19, 2018.

Detective Foley, however, is likely best known for having obtained false confessions from several defendants in the infamous Englewood Four case, which involved a 1994 rape and murder. Detective Foley obtained false statements from both Harold Richardson and, along with Detective Boudreau, Terrill Swift. *See Coleman v. City of Chicago*, No. 18 CV 00998, Complaint, Feb. 8, 2018, at 12. In the Englewood Four case, all four convicted men were exonerated when DNA from a

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

serial rapist murderer was discovered at the crime scene, which DNA excluded all four defendants. *Id.* Mr. Richardson was subsequently granted a Certificate of Innocence, despite the confession obtained by Foley. *Id.* The City of Chicago paid more than $31 million dollars to settle claims that Detectives Foley and Boudreau coerced false confessions from the Englewood Four. *Id.* at 12-13.

In 1987, Detective Foley worked with other Chicago detectives to obtain a false confession from Frank Bounds for a homicide. *Id.* at 22. The detectives hit Bounds on the head and threatened to implicate Bounds' girlfriend in the murder if he did not confess. *Id.*

Similarly, Detectives Foley and James O'Brien, the same detectives involved in the instant case, coerced a signed, false confession out of Javan Deloney in 1991. *Id.* at 21. To extract the false confession, they woke Deloney from his sleep, handcuffed him, and took him to the station. *Id.* They denied his multiple requests for an attorney and began yelling at and threatening him. *Id.* They then hit him in the chest, slapped him in the face, and forced him to watch them beat his cousin, all despite his insistence that he was not involved in the murder. *Id.*

Detective Foley was also involved in obtaining false confessions from Nevest Coleman and Derrell Fulton in a 1994 rape and murder case. Maurice Possley, THE NATIONAL REGISTRY OF EXONERATIONS, *Nevest Coleman*, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=5242 (updated July 23, 2018). Both men were exonerated in 2017 based upon DNA evidence. *Id.*

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

**Detective James O'Brien**

As recently documented by the TIRC, Detective James O'Brien "has been accused by 53 people" of physical and mental abuse during criminal investigations, several of whom have been exonerated. *In re: Claim of Corey Hodges*, TIRC Claim No. 2015.262-H, Disposition, Aug. 18, 2021, at 9.

Following is a list of representative examples provided by the TIRC:

1. O'Brien punched a suspect in the chest during an investigation and refused to let him go to the bathroom;
2. While a suspect was handcuffed in an interview room, O'Brien struck him across the face, grabbed him by the neck, pushed him against a wall, and punched him in the stomach;
3. O'Brien kicked a suspect in the head and body during an arrest;
4. O'Brien slapped a suspect in the face multiple times during an investigation and struck the suspect with a phone book;
5. O'Brien choked, kneed, and slapped a suspect during an investigation;
6. O'Brien punched a suspect during an investigation and pulled on his fingers, calling him a "motherfucker"; and
7. O'Brien grabbed, shook, and choked a suspect during an investigation to obtain a confession.

*In re: Claim of Stanley D. Miller*, TIRC Claim No. 2011.102-M, Disposition, Aug. 18, 2021, at 16.

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

In addition, very recently, Judge Maldonado suppressed Marcellous Pittman's confession based on his finding that the detectives involved, including Detective O'Brien, were not credible and had engaged in a pattern and practice of torture. In particular, Judge Maldonado found, "In 2009, Judge Clayton Crane issued a scathing ruling in one of the pattern and practice cases (Cortez Brown) involving O'Brien. Incredibly, O'Brien claimed to be unaware of the ruling. Given O'Brien's extensive involvement in torture related litigation, O'Brien's purported ignorance about the ruling is not believable. Thus, the demeanor of Halloran and O'Brien calls into question the credibility of their denials." *People v. Pittman*, 01 CR 28900, Order Granting a New Trial and Suppressing Statements Pursuant to the Illinois Torture Inquiry Relief Act, June 17, 2022, at 16, which is attached hereto. in pertinent part, as <u>Exhibit D</u>.

Moreover, with respect to the pattern and practice allegations, Judge Maldonado held:

> When the detectives punched Pittman in his chest, after he told them about his congenital heart condition, this court finds that Halloran and O'Brien inflicted severe physical and mental pain and suffering. This court finds that Halloran and O'Brien inflicted sever physical and mental pain and suffering when they placed Pittman in a chokehold until he nearly passed out. By leaving Pittman stripped down to his boxer short for an extend period while in custody, this court find that the detectives inflicted sever mental suffering. When the detectives told Pittman that he could die in the interview room and

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

> when they made oblique threats against the safety of Pittman's grandmother, this court finds that Halloran and O'Brien inflicted severe mental suffering. The detectives' actions were not accidental. This court finds that the detectives engaged in a coordinated and purposeful manner towards Pittman. Considering all the evidence presented and the demeanor of each witness, this court finds by a preponderance of the evidence that Pittman proved that Detectives Halloran and O'Brien intentionally tortured him while in police custody on November 1, and 2, 2001 to obtain his confession to shooting a police officer.

*Id.* at 17-18.

In *People v. Tyler*, 2015 IL App (1st) 123470, the Illinois Appellate Court pointed out that "the allegations of abuse by Detectives Foley, O'Brien, Boudreau, and Halloran show a pattern and practice of misconduct, in which these detectives acted in concert to coerce suspects and witnesses into providing false statements." *Id.* ¶ 190.

In sum, the conduct at issue involves the same officers, viz., Detectives Foley and O'Brien, and the conduct is similar to that in the instant case, for example, in the Deloney case detailed above, the very same two detectives hit the defendant in the chest and slapped him in the face – the precise acts alleged by the Petitioner herein. *See Reyes*, 369 Ill. App. 3d at 19-20. Secondly, the evidence is of such a conclusive character that it would likely change the result on retrial because the Petitioner's false confession was introduced against him at trial, and the use of a

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

physically coerced confession is never harmless error. *See Wrice*, 2012 IL 111860, ¶84. Thirdly, the pattern and practice evidence was not discoverable prior to the trial; in fact, the investigations and reports were not available until decades later. *See People v. Plummer*, 2021 IL App (1st) 200299, ¶ 95 ("Given the sensitive nature of police investigations and the sheer scale of the criminal justice system, it is unreasonable to expect defense counsel to discover whom these individual detectives were abusing unless counsel interviewed every suspect who was detained by them"); *Tyler*, 2015 IL App (1st) 123470, ¶ 62 (noting that "beyond interviewing anyone who had ever been a prisoner at Area 2, we can conceive of no manner in which [defense counsel] reasonably could have obtained this information"' (quoting *Patterson*, 192 Ill. 2d at 109)); *Reyes*, 369 Ill. App. 3d at 20 (pointing out that "the various allegations against [the detective] could have been discovered prior to trial only if defense counsel had interviewed every person ever detained by [the detective]"). Thus, all the necessary elements in a pattern and practice case are satisfied. *See Reyes*, 369 Ill. App. 3d at 19-20.

Accordingly, because the Petitioner was subjected to a lengthy period of interrogation, physical torture, and coercion, the Petitioner's alleged confession was obtained as a result thereof, and the Petitioner's statement was used against him at his trial, the Petitioner's right to due process was violated. *Bates*, 218 Ill. App. 3d at 297.

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

## II. CORDELL WILLIAMS RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE HIS ATTORNEY WITHDREW HIS MOTION TO SUPPRESS STATEMENTS ALLEGING TORTURE DESPITE THE FACT THAT THE STATEMENT INTRODUCED AGAINST MR. WILLIAMS AT TRIAL WAS THE RESULT OF PHYSICAL ABUSE AND COERCION.

The Petitioner's trial attorney rendered ineffective assistance of counsel by withdrawing Petitioner's motion to suppress statements alleging torture where the Petitioner's statement, which was obtained by physical abuse and coercion, was introduced against him at his trial.

Under both the United States Constitution and the Illinois Constitution, U.S. CONST. amends. VI, XIV; ILL. CONST. art. I, § 8, an accused has a due process right to the effective assistance of counsel in a criminal prosecution. *People v. Leeper*, 317 Ill. App. 3d 475, 481 (5th Dist. 2000). A defendant is denied effective assistance of counsel where his attorney's performance falls below an objective standard of reasonable representation, and there is a reasonable probability that the outcome of the proceedings would have been different but for the attorney's inadequate performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 692-94 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting *Strickland* standard). Under the prejudice prong of the *Strickland* test, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Enis*, 194 Ill. 2d 361, 376 (2000).

"Reasonably effective criminal defense attorneys raise constitutional guarantees, when appropriate, to suppress damning evidence procured in violation

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

of those guarantees." *People v. Brown*, 358 Ill. App. 3d 580, 594 (5th Dist. 2005). *See People v. Moore*, 279 Ill. App. 3d 152, 159 (5th Dist. 1996) (ruling that defense counsel failed to obtain an order suppressing numerous incriminating statements improperly elicited without the required fifth and sixth amendment admonitions). Although the decision of whether to file a motion to suppress may be considered trial strategy in certain circumstances, the failure to file a motion to suppress will be deemed to constitute ineffective assistance of counsel where filing a motion to suppress would have been defense counsel's strongest and wisest course of action, given the State's intent to introduce the defendant's statements against him at trial. *See People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 21 (finding no reasonable trial strategy in counsel's failure to file a motion to suppress defendant's statement to the police that he was transporting cocaine where the statement was the State's strongest evidence against defendant); *People v. Little*, 322 Ill. App. 3d 607, 613 (1st Dist. 2001) (concluding that counsel was ineffective for failing to file a suppression motion where it was his best course of action).

A. <u>Deficient Performance</u>.

On October 25, 1994, Petitioner's trial attorney filed a motion to suppress statements. *See* Motion to Suppress Statements, filed Oct. 25, 1994, which is attached hereto as <u>Exhibit E</u>. The motion documents, *inter alia*, that the Petitioner was held in custody for approximately 24 hours, was not allowed to use the bathroom despite repeated requests to do so, was struck in the face by a police officer while in custody, and, "as a result of the physical and psychological abuse by

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

the officers," finally agreed to give a statement. Exhibit E at 2-3. On or about March 22, 1995, however, trial counsel withdrew the motion to suppress statements. Trial counsel threatened that he would cease his representation of Petitioner, thereby resulting in the loss of Petitioner's family's savings already invested into the case, if Petitioner did not agree to the withdrawal of the motion. Petitioner's trial counsel has since been suspended from the practice of law by the Illinois Supreme Court for mismanagement of multiple criminal cases.

Where there was no independent evidence that the Petitioner was aware that David Evans, his co-defendant, was armed, and the Petitioner was tried based solely on an accountability theory, there could have been no reasonable trial strategy in failing to file a motion to suppress statements, given that this would have been the defense's strongest and wisest course of action.

Therefore, the performance of the Petitioner's attorney fell below a reasonable level of representation. *See Tayborn*, 2016 IL App (3d) 130594, ¶ 21; *Little*, 322 Ill. App. 3d at 613.

B. Prejudice.

To establish prejudice resulting from counsel's failure to file a motion to suppress (or, in this case, the improvident withdrawal of such a motion), a defendant must show that: (1) the unargued suppression motion is meritorious (i.e., would have succeeded); and (2) there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed. *People v.*

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

*Henderson*, 2013 IL 114040, ¶¶ 12, 15.

First of all, the unargued motion to suppress statements was meritorious. Repeatedly hitting a suspect in custody and refusing to permit a suspect to go to the bathroom for 24 hours despite repeated requests is not an acceptable means of interrogation. In this regard, the First District correctly stated, "No citation of authority is required for the proposition that in a civilized society torture by police officers is an unacceptable means of obtaining confessions from suspects." *People v. Cannon*, 293 Ill. App. 3d 634, 639 (1st Dist. 1997). Thus, the motion was meritorious and would have prevailed.

Secondly, there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed. Because the statement was extracted by torture, a new trial is automatically required as a matter of law because the use of a coerced confession as substantive evidence of guilt is never harmless error. *See Wrice*, 2012 IL 111860, ¶ 84. Indeed, the law was no different at the time that the Petitioner was physically abused and coerced by Detectives Foley and O'Brien. *See People v. Wilson*, 116 Ill. 2d 29, 41 (1987).

Furthermore, the only evidence that the Petitioner was aware that his co-defendant had a gun came from the statement. Absent the statement, there was no evidence to convict the Petitioner under an accountability theory. *See Rosemond v. United States*, 572 U.S. 65, 78 (2014) (holding that a defendant cannot be held criminally liable of aiding and abetting unless he has advance knowledge that his

FILED DATE: 7/18/2022 12:00 AM 94CR1551801

co-defendant is armed).

Accordingly, the Petitioner's trial attorney rendered ineffective assistance of counsel in withdrawing the motion to suppress statements extracted by torture.

Respectfully submitted,

/s/ Steven W. Becker
Steven W. Becker
Counsel for Petitioner
Law Office of Steven W. Becker LLC
205 N. Michigan Ave., Suite 810
Chicago, Illinois 60601
(312) 396-4116
Cook County No. 56574