# Exhibit 41

FILED
8/7/2023 2:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
94CR1551801
Gaughan, Vincent M.
23855437

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| **Respondent,** | ) | |
| **-vs-** | ) | **No. 94 CR 15518(01)** |
| **CORDELL WILLIAMS,** | ) | |
| **Petitioner.** | ) | |

**PETITION FOR CERTIFICATE OF INNOCENCE**
**PURSUANT TO 735 ILCS 5/2-702**

NOW COMES Cordell Williams, by and through his counsel, the Law Office of Steven W. Becker LLC, and hereby petitions the Court for an Order granting him a Certificate of Innocence based upon the following grounds:

## INTRODUCTION

In recognition of the flaws of the criminal justice system and the difficulties a former prisoner faces in resuming his life after his conviction is overturned, the General Assembly enacted 735 ILCS 5/2-702 *et seq*. This legislation allows a person whose conviction has been set aside to apply for a certificate of innocence.

The certificate of innocence enables a person who has been unjustly imprisoned to seek redress from the State. In addition, the certificate affords an opportunity for a convicted person to erase the stigma associated with a wrongful conviction. It declares that the person is *innocent*. This is very significant; for even when a conviction is overturned, the public may assume that it was set aside on technical grounds. Even attorneys may conclude that the evidence was against

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

the convicted person but was simply not strong enough to meet the high burden of proof for criminal trials. A certificate of innocence can correct this reputational harm.

Cordell Williams is such a deserving individual. Mr. Williams was arrested on May 26, 1994. The State charged Mr. Williams with, *inter alia*, the first-degree murder of Billy Johnson and Myron Cochran on or about May 26, 1994. Mr. Williams was found guilty under an accountability theory by a jury and was sentenced to natural life imprisonment. On October 17, 2022, Judge Vincent M. Gaughan granted Mr. Williams' successive petition for post-conviction relief, which alleged, *inter alia*, that Mr. Williams was tortured and coerced by detectives working under the direction of former Commander Jon Burge, vacated Mr. Williams' first-degree murder convictions, vacated the natural life sentences imposed in connection therewith, reinstated and redocketed the original counts, and then granted the State's motion of *nolle prosequi* with respect to such counts. Mr. Williams was finally released on October 21, 2022. Mr. Williams was incarcerated for twenty-eight (28) years and four (4) months.

As set forth in this Petition, a preponderance of the evidence establishes that Mr. Williams is innocent of the offenses. The only evidence used to convict him under an accountability theory came from a statement that was extracted by torture and coercion, and was dictated by the offending detectives. Cordell Williams therefore requests that the Court find and certify that he is innocent of the crimes of which he was convicted under the provisions of 735 ILCS 5/2-702 *et seq*.

## JURISDICTION

This petition for a certificate of innocence is brought under 735 ILCS 5/2-702, which provides, in pertinent part, that:

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

(c) In order to present the claim for certificate of innocence of an unjust conviction and imprisonment, the petitioner must attach to his or her petition documentation demonstrating that:

(1) he or she has been convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence; and

(2) his or her judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either he or she was found not guilty at the new trial or he or she was not retried and the indictment or information dismissed; or the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois; and

(3) his or her claim is not time barred by the provisions of subsection (i) of this Section.

(d) The petition shall state facts in sufficient detail to permit the court to find that the petitioner is likely to succeed at trial in proving that the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State of Illinois, and the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction. The petition shall be verified by the petitioner.

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

(g) In order to obtain a certificate of innocence the petitioner must prove by a preponderance of evidence that:

(1) the petitioner was convicted of one or more felonies by the State of Illinois and subsequently sentenced to a term of imprisonment, and has served all or any part of the sentence;

(2) (A) the judgment of conviction was reversed or vacated, and the indictment or information dismissed or, if a new trial was ordered, either the petitioner was found not guilty at the new trial or the petitioner was not retried and the indictment or information dismissed; or (B) the statute, or application thereof, on which the indictment or information was based violated the Constitution of the United States or the State of Illinois;

(3) the petitioner is innocent of the offenses charged in the indictment or information or his or her acts or omissions charged in the indictment or information did not constitute a felony or misdemeanor against the State; and

(4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction.

(h) If the court finds that the petitioner is entitled to a judgment, it shall enter a certificate of innocence finding that the petitioner was innocent of all offenses for which he or she was incarcerated. . . .

735 ILCS 5/2-702(c), (d), (g), and (h) (West 2022).

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

## PROCEDURAL HISTORY

Cordell Williams was found guilty under an accountability theory of the felony offenses of first-degree murder of Billy Johnson and Myron Cochran, pursuant to 720 ILCS 5/9-1(a)(1), following a jury trial conducted before the Honorable Vincent M. Gaughan under Case No. 94 CR 15518(01) in the Circuit Court of Cook County and, on August 10, 1995, was sentenced to natural life imprisonment in the Illinois Department of Corrections. (T.C. 38-40, 46-47, 74) *See* Order of Sentence and Commitment, Case No. 94 CR 15518(01), which is attached hereto as Exhibit 1.

On direct appeal, Mr. Williams raised the following issues: (1) the trial court erred in telling the jury that it should decide the meaning of the phrase "during the commission of the offense" in the accountability instructions; and (2) the court erred in failing to admonish the jury before sequestering them for the night. (P.C.2 17)

On March 26, 1999, Mr. Williams' convictions and sentence were affirmed on appeal. (P.C.2 17-24)

On March 16, 2000, Mr. Williams filed a post-conviction petition alleging that counsel on direct appeal was ineffective for (1) failing to argue that the State failed to prove him guilty beyond a reasonable doubt; and (2) failing to argue that the sentence was unconstitutional. (P.C.1 32-38)

On March 27, 2000, the trial court summarily dismissed Mr. Williams' petition. (P.C.1 59)

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

On appeal, Mr. Williams argued that the statute under which he was sentenced was unconstitutional under the single-subject clause of the Illinois Constitution. (H.C. 13)

On September 6, 2002, the appellate court found that the statute was not unconstitutional and affirmed the judgment of the trial court. (H.C. 13-15)

On September 20, 2002, Mr. Williams filed a successive post-conviction petition raising a claim of actual innocence. (P.C.2 67-70)

On September 30, 2002, the trial court dismissed the petition. (P.C.2 95)

On appeal, after the Office of the Public Defender filed a motion to withdraw, the reviewing court granted the motion and affirmed the judgment of the trial court. (P.R.J.C. 35-36)

On April 22, 2008, Mr. Williams filed a petition for writ of habeas corpus alleging (1) that the charging instrument gave him insufficient notice of the State's accountability theory; (2) that the first-degree murder statute was unconstitutional as applied to him; and (3) that his sentence was unconstitutional. (H.C. 17-26)

On June 18, 2008, the trial court dismissed the habeas petition. (H.C. 71-74)

On December 15, 2009, after the Office of the Public Defender filed a motion to withdraw, the appellate court granted the motion and affirmed the judgment of the trial court. (P.R.J.C. 19-20)

On October 27, 2011, Mr. Williams filed a petition for relief from judgment asserting, *inter alia*, that his natural-life sentence was void because the sentencing statute was declared unconstitutional under the single-subject clause. (P.R.J.C. 22-28)

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

On January 27, 2012, the trial court dismissed the petition, finding that it was untimely and barred by *res judicata*. (P.R.J.C. 36-39)

On appeal, Mr. Williams argued that his mandatory sentence of natural life without parole was unconstitutional as applied to him under the federal and state constitutions and that he was entitled to additional sentence credit. (P.C.3 16)

On July 14, 2014, the appellate court affirmed the trial court judgment. (P.C.3 6, 14-15)

As to his sentencing challenges based on the United States Supreme Court's intervening decision in *Miller v. Alabama,* 567 U.S. 460 (2012), the appellate court found that Mr. Williams "used the wrong procedural vehicle to assert constitutional challenges to his sentence" and that the "appropriate method" for raising such a claim would be a new post-conviction petition. (P.C.3 15)

On December 19, 2014, Mr. Williams filed a motion for leave to file a successive post-conviction petition in which he alleged that his mandatory sentence of natural life without parole was unconstitutional as applied to him, that he satisfied the "cause" and "prejudice" test, and that was entitled to proper sentencing credit upon resentencing. (P.C.3 18-20)

On March 25, 2015, the trial court denied Mr. Williams leave to file his successive post-conviction petition. (P.C.3 27) The trial court held that Mr. Williams may have been able to demonstrate cause but could not demonstrate prejudice. (P.C.3 26-27)

On May 11, 2018, the appellate court issued a published opinion reversing the trial court, vacating Mr. Williams' sentence, remanding the case for a new sentencing hearing, and

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

instructing the circuit court to issue a corrected mittimus reflecting a sentencing credit of 441 days. *People v. Williams*, 2018 IL App (1st) 151373 ¶¶ 25, 30.

On November 28, 2018, the Illinois Supreme Court, under its supervisory power, vacated the appellate court's opinion and returned the case for reconsideration in light of *People v. Harris*, 2018 IL 121932, on the issue of whether Mr. Williams' sentence violated the proportionate penalties clause. *People v. Williams*, 2018 IL LEXIS 1153 (Nov. 28, 2018).

On March 27, 2019, the appellate court issued an order allowing Mr. Williams' agreed motion for summary disposition and remanding the case to the circuit court with instructions to allow Mr. Williams leave to file a successive post-conviction petition and to appoint counsel for second-stage proceedings.

On July 8, 2020, Mr. Williams filed a successive post-conviction petition.

On July 18, 2022, Mr. Williams filed supplemental claims to his successive post-conviction petition, including claims that his due process rights were violated where the police, who had engaged in a pattern and practice of misconduct, used torture and coercion to extract a statement from him, which was introduced against him at his criminal trial, and that his trial counsel was ineffective for withdrawing Mr. Williams' motion to suppress statements alleging torture.

On October 17, 2022, Judge Vincent M. Gaughan granted Mr. Williams' successive petition for post-conviction relief, which alleged, *inter alia*, that Mr. Williams was tortured and coerced by detectives working under the direction of former Commander Jon Burge, vacated Mr. Williams' first-degree murder convictions, vacated the natural life sentences imposed in

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

connection therewith, reinstated and redocketed the original counts, and then granted the State's motion of *nolle prosequi* with respect to such counts. *See People v. Williams*, Case No. 94 CR 15518(01), Order, dated October 17, 2022, which is attached hereto as Exhibit 2.

As a result of the charges, Mr. Williams was incarcerated for twenty-eight (28) years and four (4) months. Mr. Williams was in custody from on or about May 26, 1994, the date of his arrest, until October 21, 2022, the date he was released from the Illinois Department of Corrections following the grant of the State's motion of *nolle prosequi*.

**STATUTE OF LIMITATIONS**

Cordell Williams is within the limitation period for filing a petition for a certificate of innocence because his convictions were vacated by the trial court on October 17, 2022, and this Petition was filed well within two years of the circuit court vacating such convictions. *See* 735 ILCS 5/2-702(i).

**BASIS FOR CERTIFICATE OF INNOCENCE**

In May 1994, Cordell Williams was 19 years old, had a High School diploma, a job at the Board of Education, and no prior criminal convictions. There is no evidence that, on May 26, 1994, Mr. Williams ever handled a gun, was aware of any plan to commit criminal activity, or knowingly aided David Evans before or during Evans' unanticipated shooting of Billy Johnson and Myron Cochran. At trial, the only evidence introduced against Mr. Williams to demonstrate his accountability for David Evans' actions came from a tortured and coerced statement extracted from Mr. Williams.

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

On May 25, 1994, Cordell Williams, David Evans, and two others, Veno and Chris, all went to the hospital to visit a friend, Paris McMoore, who had been shot. After visiting their friend at Northwestern Hospital, the group went to a party at Veno's house.

Mr. Williams, who was driving his mother's car, was providing rides home from the party for those going his way, including David Evans. In the early morning of May 26, 1994, Mr. Williams was driving, Londell Harper was seated on the front passenger side, David Evans was in the back seat on the driver's side, and Andre Rudik was in the back passenger seat.

On the way home to drop Evans off, and within just several blocks from Evan's house, David Evans demanded that Mr. Williams pull over the car. Evans thought he saw two individuals who had previously tried to shoot him sitting in a restaurant located at Halsted and 74th Street.

David Evans then went into the restaurant, shot and killed the two individuals, Myron Cochran and Billy Johnson, and ran back to the car. Evans was later identified by two eyewitnesses, including an off-duty police officer, who was across the street from the restaurant at the time of the incident.

The off-duty police officer, Stan Sanders, testified that Mr. Williams started the car and began pulling away as Evans ran towards the car. Evans stumbled on his way to the car but eventually was able to get into the back seat of the car.

The off-duty police officer chased the car and reported the license plate number, but lost the vehicle. After a short distance, Mr. Williams demanded that David Evans get out of the car, dropped off the other passengers, and went home.

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

Based on the license plate registration number, the police arrested Mr. Williams at approximately 1:30 a.m. in the early morning hours of May 26, 1994, after which he was transported to Chicago's Area One Police Headquarters.

Upon arrival at Area One, Mr. Williams was placed in an interrogation room and handcuffed to a ring. Following initial questioning by Detective James O'Brien, the detective told Mr. Williams that he would be leaving the room and, upon his return, Williams would be begging to tell him something.

Thereafter, Detective William Foley entered the room with a phone book. Upon instruction, Mr. Williams stood up, after which Detective Foley struck him in the rib area with the phone book, knocking the wind out of Mr. Williams. Detective Foley then slapped Mr. Williams in the face. At that point, Detective Foley left the room.

Detective O'Brien re-entered the room and informed Mr. Williams that he would soon be speaking with Assistant State's Attorney Gregory Vaci and that he had better cooperate.

Detective O'Brien then informed Mr. Williams that his father was at the station. Detective O'Brien informed Cordell Williams' father, Odell Williams, that if Cordell would cooperate, he could walk out of the station with his father. Detective O'Brien also asked Odell Williams about his dialysis treatments, when he last saw Cordell, and if he knew who Cordell was with. After that, Detective O'Brien accompanied Odell Williams to an interrogation room.

Cordell Williams was then brought into the room with his father. When Detective O'Brien left the room, Cordell broke down crying and told his father that he did not kill anyone. Odell Williams begged his son to tell the detectives whatever they wanted to know. Cordell Williams, however, cut off his father and told him that he had been beaten up in custody and that his face was putty.

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

Detective O'Brien then came into the room and told Odell Williams that his son had to go talk with the state's attorney. Detective O'Brien rehearsed the alleged statement with Cordell Williams and corrected certain details. Mr. Williams was deprived of food, water, and restroom breaks during this period.

At approximately 12:30 a.m. on May 27, 1994, ASA Vaci and Detective O'Brien interviewed Mr. Williams. A court-reported statement was taken at around 2:30 a.m. Mr. Williams was in the custody of the police for approximately 25 hours between 1:30 a.m. on May 26, 1994, and 2:30 a.m. on May 27, 1994, when a statement was taken. Mr. Williams' coerced statement was used against him at trial.

On October 25, 1994, Cordell Williams' trial attorney filed a motion to suppress statements.

The motion documented that Mr. Williams was held in custody for approximately 24 hours, was not allowed to use the bathroom despite repeated requests to do so, was struck in the face by a police officer while in custody, and, "as a result of the physical and psychological abuse by the officers," finally agreed to give a statement.

On or about March 22, 1995, Williams' trial counsel withdrew the motion to suppress statements. Mr. Williams' trial counsel threatened that he would cease his representation of Cordell Williams, thereby resulting in the loss of Williams' family's savings already invested into the case, if Mr. Williams did not agree to the withdrawal of the motion to suppress statements.

Williams' trial counsel has since been suspended from the practice of law by the Illinois Supreme Court for mismanagement of multiple criminal cases.

The only evidence that Mr. Williams was aware that David Evans had a gun came from Williams' coerced statement. Absent Mr. Williams' coerced statement, there was no evidence to

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

convict him under an accountability theory at trial.

In the State's closing trial rebuttal argument, it specifically alleged to the jury that "it's his [Cordell William's] words that have him here today . . . ."

Londell Harper, one of the other passengers in the car at the time of the Evans shooting incident, was found not guilty in a bench trial.

**Detective William Foley**

According to the Illinois Torture Inquiry and Relief Commission (TIRC), Detective William Foley has "been the subject of many complaints of police misconduct. Investigators have identified seven published Illinois cases detailing allegations of abuse leveled against Detective Foley or officers working with Detective Foley. In 2013, the City of Chicago paid in excess of $6 million dollars to settle a suit brought against several officers, including William Foley. In addition, numerous criminal defendants have lodged formal complaints alleging that Detective Foley engaged in misconduct." *In re: Claim of Arnold Day*, TIRC Claim No. 2011.095-D, Corrected Disposition, Jan. 23, 2017, at 9.

For example, Arnold Day was arrested in February 1992, transported to Area 3, placed in an interrogation room, and handcuffed to a steel ring. *Id.* at 2, 4. Day was questioned by Detective Foley, Detective Kenneth Boudreau, and another detective. *Id.* at 4. "At some point, Day was alone with Boudreau and Foley re-entered. Foley yelled at Day, then grabbed Day by the collar and pushed him against the wall, and threatened to throw him out the window. Boudreau was present but did nothing. Day then agreed to confess to the murders . . . ." *Id.* Day's conviction was subsequently vacated based on the torture perpetrated by Foley. *See* Elena Sucharetza, *Cook County 1994 Murder Conviction Overturned; Allegations of Cop Torture*,

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

INJUSTICE WATCH, Dec. 19, 2018.

Detective Foley, however, is likely best known for having obtained false confessions from several defendants in the infamous Englewood Four case, which involved a 1994 rape and murder. Detective Foley obtained false statements from both Harold Richardson and, along with Detective Boudreau, Terrill Swift. *See Coleman v. City of Chicago*, No. 18 CV 00998, Complaint, Feb. 8, 2018, at 12. In the Englewood Four case, all four convicted men were exonerated when DNA from a serial rapist murderer was discovered at the crime scene, which DNA excluded all four defendants. *Id.* Mr. Richardson was subsequently granted a Certificate of Innocence, despite the confession obtained by Foley. *Id.* The City of Chicago paid more than $31 million dollars to settle claims that Detectives Foley and Boudreau coerced false confessions from the Englewood Four. *Id.* at 12-13.

In 1987, Detective Foley worked with other Chicago detectives to obtain a false confession from Frank Bounds for a homicide. *Id.* at 22. The detectives hit Bounds on the head and threatened to implicate Bounds' girlfriend in the murder if he did not confess. *Id.*

Similarly, Detectives Foley and James O'Brien, the same detectives involved in the instant case, coerced a signed, false confession out of Javan Deloney in 1991. *Id.* at 21. To extract the false confession, they woke Deloney from his sleep, handcuffed him, and took him to the station. *Id.* They denied his multiple requests for an attorney and began yelling at and threatening him. *Id.* They then hit him in the chest, slapped him in the face, and forced him to watch them beat his cousin, all despite his insistence that he was not involved in the murder. *Id.*

Detective Foley was also involved in obtaining false confessions from Nevest Coleman and Derrell Fulton in a 1994 rape and murder case. Maurice Possley, THE NATIONAL REGISTRY

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

OF EXONERATIONS, *Nevest Coleman*, https://www.law.umich.edu/special/exoneration/Pages/casedetail.aspx?caseid=5242 (updated July 23, 2018). Both men were exonerated in 2017 based upon DNA evidence. *Id.*

**<u>Detective James O'Brien</u>**

As recently documented by the TIRC, Detective James O'Brien "has been accused by 53 people" of physical and mental abuse during criminal investigations, several of whom have been exonerated. *In re: Claim of Corey Hodges*, TIRC Claim No. 2015.262-H, Disposition, Aug. 18, 2021, at 9.

Following is a list of representative examples provided by the TIRC:

1. O'Brien punched a suspect in the chest during an investigation and refused to let him go to the bathroom;
2. While a suspect was handcuffed in an interview room, O'Brien struck him across the face, grabbed him by the neck, pushed him against a wall, and punched him in the stomach;
3. O'Brien kicked a suspect in the head and body during an arrest;
4. O'Brien slapped a suspect in the face multiple times during an investigation and struck the suspect with a phone book;
5. O'Brien choked, kneed, and slapped a suspect during an investigation;
6. O'Brien punched a suspect during an investigation and pulled on his fingers, calling him a "motherfucker"; and
7. O'Brien grabbed, shook, and choked a suspect during an investigation to obtain a confession.

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

*In re: Claim of Stanley D. Miller*, TIRC Claim No. 2011.102-M, Disposition, Aug. 18, 2021, at 16.

In addition, Judge Maldonado recently suppressed Marcellous Pittman's confession based on his finding that the detectives involved, including Detective O'Brien, were not credible and had engaged in a pattern and practice of torture. In particular, Judge Maldonado found, "In 2009, Judge Clayton Crane issued a scathing ruling in one of the pattern and practice cases (Cortez Brown) involving O'Brien. Incredibly, O'Brien claimed to be unaware of the ruling. Given O'Brien's extensive involvement in torture related litigation, O'Brien's purported ignorance about the ruling is not believable. Thus, the demeanor of Halloran and O'Brien calls into question the credibility of their denials." *People v. Pittman*, 01 CR 28900, Order Granting a New Trial and Suppressing Statements Pursuant to the Illinois Torture Inquiry Relief Act, June 17, 2022, at 16, which is attached hereto as Exhibit 3.

Moreover, with respect to the pattern and practice allegations, Judge Maldonado held:

> When the detectives punched Pittman in his chest, after he told them about his congenital heart condition, this court finds that Halloran and O'Brien inflicted severe physical and mental pain and suffering. This court finds that Halloran and O'Brien inflicted sever physical and mental pain and suffering when they placed Pittman in a chokehold until he nearly passed out. By leaving Pittman stripped down to his boxer short for an extend period while in custody, this court find that the detectives inflicted sever mental suffering. When the detectives told Pittman that he could die in the interview room and when they made oblique threats against the safety of Pittman's grandmother, this court finds that Halloran and O'Brien inflicted severe mental suffering. The detectives' actions were not accidental. This court finds that the detectives engaged in a coordinated and

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

> purposeful manner towards Pittman. Considering all the evidence presented and the demeanor of each witness, this court finds by a preponderance of the evidence that Pittman proved that Detectives Halloran and O'Brien intentionally tortured him while in police custody on November 1, and 2, 2001 to obtain his confession to shooting a police officer.

*Id.* at 17-18.

In *People v. Tyler*, 2015 IL App (1st) 123470, the Illinois Appellate Court pointed out that "the allegations of abuse by Detectives Foley, O'Brien, Boudreau, and Halloran show a pattern and practice of misconduct, in which these detectives acted in concert to coerce suspects and witnesses into providing false statements." *Id.* ¶ 190.

In sum, the conduct at issue involves the same officers, viz., Detectives Foley and O'Brien, and the conduct is similar to that in the instant case, for example, in the Deloney case detailed above, the very same two detectives hit the defendant in the chest and slapped him in the face – the precise acts alleged by the Petitioner herein. *See Reyes*, 369 Ill. App. 3d at 19-20.

Absent the statement extracted from Mr. Williams by torture and coercion, there was no evidence that Mr. Williams was accountable for the actions of David Evans on May 26, 1994. Accordingly, the petition demonstrates that, by a preponderance of evidence, Mr. Williams is actually innocent of the offenses for which he was wrongfully convicted and incarcerated.

## ENTITLEMENT TO A CERTIFICATE OF INNOCENCE

In *People v. Washington*, 2023 IL 127952, the Illinois Supreme Court very recently reversed the lower courts' holdings denying the petitioner a Certificate of Innocence and remanded the case for the issuance of a Certificate of Innocence in a police torture case, even

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

though the petitioner originally pled guilty to the charge for which he was incarcerated. *Id.* ¶ 64. In *Washington*, the petitioner pled guilty after the police coerced a confession from him. *Id.* ¶ 1. After he served his sentence, his conviction was reversed, and the charges against him dismissed. *Id.* Moreover, identical to Mr. Williams, the petitioner in *Washington* was 19 years old at the time of the offense and had no criminal record. *Id.* ¶ 3. Furthermore, the offense in *Washington* occurred in close proximity (within approximately one year) of the offenses in the instant matter, and – not coincidentally – one of the detectives involved in the misconduct in *Washington* was James O'Brien. *Id.* ¶ 3.

In rejecting the interpretation that one who pleads guilty voluntarily brings about or causes his or her own conviction, the Illinois Supreme Court cited the reasoning of *People v. McClinton*, 2018 IL App (3d) 160648, with approval, *id.* at ¶ 44, ruling that "the State's and the lower courts' interpretation of 'voluntary' conflicts with the intent of the statute and does not sufficiently safeguard an innocent petitioner who confessed or pleaded guilty through no fault of his own, for example, due to police coercion." *Id.* ¶ 45.

The Court further pointed out that "Petitioner's unrebutted evidence established that the detectives isolated him, handcuffed him to his chair, kicked his chair over, and pushed and slapped him. He signed the prewritten confession because the officers told him he could go home if he did and because he could no longer stand the physical and psychological abuse. He was interrogated by detectives who undisputedly engaged in coercive conduct at best and torture at worst." *Id.* ¶ 57.

In the present case, Mr. Williams was convicted of two murders he did not commit on a theory of accountability based exclusively upon information contained in his involuntary and

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

tortured confession, which was coerced by Detectives William Foley and James O'Brien, who have a long history of misconduct under former Commander Jon Burge.

Based upon the foregoing, it is clear that Mr. Williams is "likely to succeed at trial in proving that [he] is innocent of the offenses charged in the indictment." 735 ILCS 5/2-702(d).

**CONCLUSION**

Accordingly, Cordell Williams respectfully requests that this Court grant his Petition, issue a certificate of innocence, enter an expungement order pursuant to 735 ILCS 5/2-702(h), order the Clerk to transmit the certificate to the Court of Claims in accordance with the statute, and for such further relief as the Court deems just and proper. A verification by the Petitioner, a draft Order, and supporting documentation are submitted with this Petition.

Respectfully submitted,

/s/ Steven W. Becker
Steven W. Becker
Law Office of Steven W. Becker LLC
205 N. Michigan Avenue, Suite 810
Chicago, IL 60601
(312) 396-4116
Cook County #56574

FILED DATE: 8/7/2023 2:16 PM 94CR1551801

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**CRIMINAL DIVISION**

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **-vs-** | ) | **No. 94 CR 15518** |
| | ) | |
| **CORDELL WILLIAMS,** | ) | |
| | ) | |
| **Petitioner.** | ) | |

**VERIFICATION**

I, Cordell Williams, being duly sworn under oath, do hereby depose and state that the assertions in the foregoing Petition for Certificate of Innocence are true and correct to the best of my knowledge and belief, except as to those matters based upon information and belief, and affiant believes them to be true.

Cordell Williams
Affiant

Subscribed and sworn to before me

this 3rd day of April, 2023.

NOTARY PUBLIC

JERMAINE D STARNES
Official Seal
Notary Public - State of Illinois
My Commission Expires Sep 27, 2023